UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

     Plaintiff,

v.

Nkajlo Vangh,

     Defendant.

**MEMORANDUM OPINION
AND ORDER**
Crim. No. 16-335 (MJD)

---

     Lisa D. Kirkpatrick and Michelle E. Jones, Assistant United States Attorneys, Counsel for Plaintiff.

     Brandon Sample, Counsel for Defendant.

---

     This matter is before the Court on Defendant's Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A).

## I.    Background

     Defendant and his wife were charged with multiple counts of aiding and abetting bank fraud in violation of 18 U.S.C. §§ 2 and 1344.  The Indictment alleged that Defendant and his wife fraudulently diverted funds from the Hmong American Federal Credit Union ("HAFCU") to themselves and to businesses they operated through fraudulent loans deposited into accounts that they controlled.

On May 23, 2017, Defendant pleaded guilty to Count 1 of the Indictment, bank fraud, and stipulated that from an unknown date through at least September 2010, he and his wife knowingly devised and executed a scheme and artifice to defraud and to obtain monies and funds under the custody and control of the HAFCU by means of false and fraudulent pretenses, representations, promises and omissions of material facts. He further stipulated that as part of the scheme, they issued eight fraudulent loans totaling $2,075,000.

On September 11, 2017, Defendant was sentenced to a term of imprisonment of 90 months, which was a downward variance from the applicable guideline range of 121 to 151 months. One basis for the downward variance was Defendant's serious medical conditions, including Type II Diabetes, blindness in his right eye, hearing loss and mental health issues due to his medical and physical limitations. (Doc. No. 106 (Statement of Reasons at 5).)

Defendant is currently incarcerated at the Federal Medical Center in Rochester, Minnesota and is scheduled for release on May 24, 2024.

On May 17, 2019, Defendant asked the BOP to grant him compassionate release under the First Step Act and 18 U.S.C. § 3582(c)(1)(A). By letter dated August 16, 2019, the Warden recommended to the Office of General Counsel

("OGC") that Defendant be considered for a modification to his term of imprisonment because he "meets the criteria for consideration due to his debilitating medical condition." (Gov't Ex. 2.)

On September 13, 2019, the OGC denied Defendant's motion because Defendant did not meet the requirements set forth in Section 3(b) of the BOP's Program Statement No. 5050.50 on Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g).

Section 3(b) provides that the OGC may consider an inmate's request for a reduction in sentence if the inmate has "an incurable, progressive illness or [has] suffered a debilitating injury from which they will not recover." It further provides that consideration should be given if the inmate is "[c]ompletely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair; or [c]apable of only limited self-care and is confined to a bed or chair more than 50% of waking hours."

After reviewing Defendant's submissions and after consulting with the BOP's Medical Director, the OGC determined that Defendant

> is independent with the majority of his activities of daily living (ADLs) and instrumental ADLs and uses magnifying glasses and hearing aids. He was issued a four-wheeled rolling walker with a seat and has had no documented falls over the past 18 months. As [Defendant] is independent

with the majority of his ADLs and instrumental ADLs and is not confined to his bed or chair for more than 50 percent of his waking hours, he does not meet the criteria for a RIS under section 3(b).  Accordingly, his RIS request is denied.

(Gov't Ex. 3.)

## II.    Motion to Reduce Sentence

### A.    Standard

Pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may, upon a defendant's motion following exhaustion of administrative remedies, "reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that-- **(i)** extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

Section 1B1.13 of the United States Sentencing Guidelines ("USSG") addresses motions pursuant to 18 U.S.C. § 3582(c)(1)(A).  While § 1B1.13 has not been amended to reflect the statutory amendments to § 3582(c) made pursuant to

the First Step Act[1], it does address what should be considered extraordinary and compelling reasons due to the medical conditions of the defendant.

    (A)    Medical Condition of the Defendant.--

        (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (I.E., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-state organ disease, and advanced dementia.

        (ii)    The defendant is –

            (I)    Suffering from a serious physical or medical condition,
            (II)    Suffering from a serious functional or cognitive impairment, or
            (III)    Experiencing deteriorating physical or mental health because of the aging process,

            That substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G., Section 1B1.13, Application Note 1.

---

[1] Because the policy statements have not been amended to address motions for compassionate release brought by the defendant -only those brought by the BOP – there is a disagreement among courts as to whether the policy statements should apply. See United States v. Rodd, No. 13-cr-230 (ADM/JSM), 2019 WL 5623973, at * 3 (D. Minn. Oct. 31, 2019). In this case, however, both parties cite to the policy statement in support of their arguments.

**B.     Analysis**

Defendant argues he easily meets the threshold requirement of extraordinary and compelling reasons warranting a reduction in his sentence to time served, or probation with or without home confinement based on his serious medical conditions, physical impairments and deteriorating physical health.  Defendant further argues he has substantial diminished ability to provide self-care in a correctional facility within the meaning of Application Note 1(A)(ii).

He is legally blind, with partial vision in his right eye and no vision in his left eye and his blindness is a dangerous functional impairment in a prison setting.  Defendant also suffers from hearing loss, with no hearing in his right ear and partial hearing in his left.  An ENT at the Mayo Clinic concluded that he likely has a cholesteatoma in his right middle ear which requires drops and follow-up testing.  Defendant also suffers from bouts of dizziness which makes him a fall risk and he requires the use of a 4-wheeled walker with a seat to ambulate.

Defendant also suffers from hypertrophic cardiomyopathy, a thickening of the heart muscle, with regular hypotensive episodes and progressive worsening

of symptoms.  In addition, he suffers from coronary artery disease that is managed through medical and monitoring.  Defendant has also been diagnosed with Type II diabetes with diabetic nephropathy, hyperkalemia, glaucoma, hypotension, chronic kidney disease, nasopharynx extensive crusting – severe nasal dryness, and chronic neck pain.

Defendant argues he will never recover from the above medical conditions and that his medical conditions make him particularly susceptible to injury and illness.  He argues that a correctional facility environment does not provide the safe and sanitary conditions required to manage his health issues.  He further argues that his medical records show an increasing need to seek care from healthcare professionals outside the BOP for his complicated medical conditions.

With respect to the § 3553(a) factors, Defendant asserts that since his sentencing, two factors have changed and carry more weight now: the history and characteristics of Defendant and the need for the sentence imposed to provide Defendant with medical care in the most effective manner.

Defendant asserts he is now 63 years old and his physical and medical conditions have worsened significantly.  He asserts he needs to seek independent medical care to avoid delays in medical attention and to have access to regular

and proper therapies.  He argues the BOP will not be able to provide adequate medical care given the frequency in which he requires treatment and monitoring, which will only increase in time.  If granted compassionate release, Defendant would have the option to receive regular medical care and therapy from providers that have cared for him over the past decades in the surrounding community near his family.

Defendant further argues that serving a term of imprisonment with his documented medical conditions is more laborious than that served by most inmates.  Defendant has served over twenty months and has been seriously ill for much of that time.  He argues a sentence of time served will not minimize the seriousness of his offense and will provide just punishment and adequate deterrence, and that he is not a danger to the safety of any other person or the community.  If released, he would be welcomed by his family who would provide him the necessary support.

The government opposes the motion for compassionate release, arguing that his medical conditions are stable, if not improving, and because such a reduction would disregard the parties' plea agreement and undermine the § 3553(a) factors.

Based on the files, record and proceedings herein, the Court finds that Defendant has not demonstrated a right to a sentence reduction. There is no dispute that Defendant has a history of serious health issues. In fact, the Court considered his serious health issues when it imposed a below-range sentence of 90 months less than two years ago.

Defendant has been serving his sentence in the in-patient medical unit at the Rochester facility, where he has access to world-renowned health care at the Mayo Clinic, and is independent with the majority of his activities of daily living (ADLs). He can read with the use of a magnifying glass and can hear with the assistance of hearing aids. He is taking cardiac medications for his heart issues, has a 4-wheeled walker with a seat and has not had any documented falls in the last 18 months. Defendant leads a sedentary lifestyle but is not confined to his bed or chair for more than 50% of his waking hours.

Defendant has not demonstrated how his condition has substantially diminished his ability to provide self-care within the environment of a correctional facility. Each of the limitations that he identifies are being met with assistive devices, such as magnifying glasses, hearing aids and a walker.

The Court has also considered all of the § 3553(a) factors with respect to Defendant's request for a sentence reduction. Over multiple years, Defendant and his wife, who is serving a 72 month sentence, orchestrated a fraud scheme to divert funds from the HAFCU to themselves, their businesses and others, in violation of their fiduciary duties to the credit union and its membership. In all, the fraudulent scheme diverted millions of dollars from the credit union. The scheme involved the use of numerous transactions to conceal the embezzlement, including the creation of fraudulent loans and making payments to keep the loans current. Ultimately, the fraudulent scheme caused the credit union to fail.

The Court recognizes that Defendant overcame many hardships in his early life, fleeing Laos and living in a refugee camp, yet Defendant demonstrated greed and callous indifference to others when committing the crime of conviction. Given the nature of the crime, the 90 month sentence reflects the seriousness of that crime, provides just punishment and adequate deterrence. To date, Defendant has only served approximately 25% of that sentence. The Court finds a sentence reduction further creates unwarranted sentencing disparities.

### C.  Request for Hearing

Defendant has requested that the Court hold a hearing prior to ruling on his motion, claiming there are disputed issues of material fact as to whether he has satisfied the threshold criteria for compassionate release.  He further asserts that his request for hearing should be granted in light of the fact that the Warden recommended he receive a compassionate release.

The Court disagrees.  The Warden did not recommend he be given compassionate release.  Instead, the Warden recommended that his request be considered for such modification.  "We are recommending Mr. Nkajlo Vangh, Register Number 20956-041, for consideration pursuant to 18 United States Code Section 3582(c), for modification of the imposed term of imprisonment.  He meets the criteria for consideration due to his debilitating medical condition."  (Doc. No. 147 at 10 (Letter from Warden Kallis to the Office of General Counsel).)  Accordingly, the Court finds a hearing is not warranted.

IT IS HEREBY ORDERED that Defendant's Motion to Reduce Sentence [Doc. No. 135] is **DENIED.**

Date:   December 19, 2019            s/ Michael J. Davis
                                                             Michael J. Davis
                                                             United States District Court